ORIGINAL

Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501          Fax (323) 937-4503
email: BCC4929@aol.com

*Attorney For Citizen Smith, LLC*

FILED
NOV 12 2008
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>**CITIZEN SMITH, LLC**<br><br>Debtor. | Case No. 2:08-bk-19197-SB<br>Assigned to the Honorable Samuel Bufford<br>Chapter 11<br><br>**SUPPLEMENTAL DECLARATIONS OF BARUCH C. COHEN, DAN CATULLO, MANDY CATULLO IN SUPPORT OF OPPOSITION TO MOTION TO APPOINT CHAPTER 11 TRUSTEE**<br><br>Date: November 12, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1575<br>Edward Roybal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

## DECLARATION OF BARUCH C. COHEN

I, BARUCH C. COHEN, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; US Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of CA; Eastern District of CA; Northern District of CA; & Southern District of CA.

3. I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4. I represent Debtor, Citizen Smith, LLC (hereinafter referred to as "CITIZEN SMITH") herein. This Declaration is prepared and submitted to advise the Court of the current status of the proceedings.

5. CITIZEN SMITH operates a popular and successful Hollywood restaurant and bar under the name "Citizen Smith" at 1602 Cahuenga Boulevard (hereinafter referred to as "the premises"). CITIZEN SMITH leases the premises under the terms of a Commercial Property Lease dated February 1, 2004, between CITIZEN SMITH as lessee and Hollywood Media Center, LLC (hereinafter referred to as "HMC") and David Gajda (hereinafter referred to as "GAJDA") as lessor. The term of the lease is for a period of ten years from February 1, 2004, with two successive five-year option periods to renew. That Lease was originally executed on b7ehalf of CITIZEN SMITH by its then-sole manager and member, Andrew Belchic (hereinafter referred to as "BELCHIC"). BELCHIC thereafter sold CITIZEN SMITH to Dan Catullo (hereinafter referred to as "CATULLO") in 2007, and resigned as its manager.

6. On May 13, 2008, CITIZEN SMITH filed an action against HMC and GAJDA in Los Angeles County Superior Court as Case No. BC390765, entitled *Citizen Smith, LLC v. Hollywood Media Center, LLC; David Gajda, et al.* That case alleges 11 causes of

action based upon allegations of BELCHIC's conduct to (1) prevent the sale of CITIZEN SMITH and assignment of the CITIZEN SMITH lease to James Sinclair ("SINCLAIR") pursuant to its terms; and (2) cause a forfeiture of all of the business and the assets of CITIZEN SMITH to HMC and GAJDA.

7. On April 24, 2008 HMC and GAJDA subsequently brought an unlawful detainer action (Case No. 08U04924), which is now consolidated with CITIZEN SMITH's complaint against HMC and GAJDA in *Citizen Smith, LLC v. Hollywood Media Center, LLC, David Gajda, et al*. Initially, HMC and GAJDA asserted that CITIZEN SMITH had no valid lease because the transfer of interest from BELCHIC to CATULLO required CITIZEN SMITH to renegotiate the terms of the lease, particularly, the monthly rent payments. CITIZEN SMITH contends that since transfer of the business, HMC and GAJDA have accepted CITIZEN SMITH's rent payments consistent with the original lease terms, thereby confirming the validity of the original lease. The unlawful detainer action is based upon HMC and GAJDA's claim that CITIZEN SMITH did not timely pay rent in April of 2008. CITIZEN SMITH maintains that while HMC and GAJDA's Notice to Quit was still pending, CITIZEN SMITH tendered the full rent, which GAJDA personally accepted and acknowledged receipt of in writing.

8. Since learning of the proposed sale of CITIZEN SMITH to SINCLAIR in approximately April of 2008, HMC, GAJDA, and BELCHIC have engaged in a continuing course of conduct to force CITIZEN SMITH to close its business, which, by the terms of the lease, would result in a forfeiture of substantial improvements which CITIZEN SMITH has made to the premises, and allow HMC, GAJDA, to recapture CITIZEN SMITH's now-successful business interests. Among these actions are the following:

  1. HMC and GAJDA's demands that CITIZEN SMITH enter into a new lease for the premises at current market rates, including demands that CITIZEN SMITH pay for the square footage which CITIZEN SMITH itself has added in improving the premises;

  2. HMC's unlawful detainer action;

3. HMC's Motion to Appoint a Chapter 11 Trustee in these proceedings, to replace CITIZEN SMITH's current management, likely to jeopardize CITIZEN SMITH's business;

4. HMC and GAJDA's continuing efforts, in violation of the automatic stay:

   i. on August 29, 2008, HMC served on CITIZEN SMITH a Demand to Vacate Premises and Cease Sale of Alcoholic Beverages on Premises, signed by David Gajda, in which HMC declares itself "the owner and entitled to possession of" the premises, demanding that CITIZEN SMITH's current management, and all others acting for them, immediately vacate the property;

   ii. GAJDA lodged complaints against CITIZEN SMITH with Alcoholic Beverage Control ("ABC"), Los Angeles Police Department, City of Los Angeles Code Enforcement, and other governmental entities, asserting that CITIZEN SMITH and its management are operating in violation of liquor laws, zoning and use laws, building codes, etc. (most have resulted in no corrections being required of CITIZEN SMITH; as to those which did require correction, HMC and GAJDA have refused to cooperate with CITIZEN SMITH, preventing it from complying);

   iii. On September 5, 2008, at 3:58 p.m., HMC filed its "Complaint for Damages and Injunction" against CITIZEN SMITH's current management (*Hollywood Media Center, LLC, etc. v. Patrick Johnston, James Sinclair, Daniel Catullo, etc., et al.*, Los Angeles County Superior Court Case No. BC397669), alleging the following causes of action against CITIZEN SMITH's management, and others: (a) Intentional Interference with Contract; (b) Conspiracy; (c) Negligent Interference with Contract; (d) Ejectment; and (e) Unfair Business Practices; and

   iv. conspired with BELCHIC in his actions seeking to discredit or ruin CITIZEN SMITH and/or its current management.

5. On or about June 12, 2008, BELCHIC, without knowledge or consent of CITIZEN SMITH or anyone authorized to act on its behalf, and without any right or authority, went to the ABC Metro office and submitted a sworn declaration, as the Managing Member of CITIZEN SMITH, surrendering CITIZEN SMITH's liquor license, thereby forfeiting the right of CITIZEN SMITH to sell alcoholic beverages.

6. On June 17, 2008, BELCHIC acknowledged to SINCLAIR that he had unilaterally surrendered CITIZEN SMITH's license on June 12, 2008, claiming he had the right to do so as the original signator on behalf of the LLC which obtained the liquor license in December, 2005. BELCHIC withdrew his surrender of the license on June 20, 2008 and advised SINCLAIR of CITIZEN SMITH that he would unilaterally surrender the license again, or transfer it to a third-party, unless paid $120,000 cash by CITIZEN SMITH;

7. BELCHIC's continuing efforts, in violation of the automatic stay:

   i. again, fraudulently representing himself and surrendering CITIZEN SMITH's liquor license with the ABC, BELCHIC still refused to unsurrender the license to the satisfaction of the ABC, hiding behind the Court's reluctance to order him to commit perjury, when it was perjury he committed when he signed the document surrendering the liquor license in the first place; and

   ii. conspired with HMC and GAJDA in their actions seeking to discredit or ruin CITIZEN SMITH and/or its current management (which joint venture included BELCHIC retaining HMC and GAJDA's counsel as his own).

9. On August 26, 2008, the Court heard HMC's Motion to Appoint a Chapter 11 Trustee, at which time the Court, instead of ruling on the Motion, referred the parties to mediation. Since that time, I have made several attempts on CITIZEN SMITH's behalf to arrange and schedule meaningful mediation with HMC and GAJDA and their counsel.

10. CITIZEN SMITH has moved the Court to hold HMC and GAJDA to be in contempt of court for their conduct in violation of the automatic stay, as set forth above. CITIZEN SMITH will seek damages and other appropriate relief from HMC and GAJDA arising from this conduct.

11. On September 18, 2008, the Court found BELCHIC to be in contempt of court for his conduct in violation of the automatic stay, as set forth above. However, even after such findings and the Court's unequivocal orders to BELCHIC to take all necessary actions to restore CITIZEN SMITH's liquor license. CITIZEN SMITH will seek damages and other appropriate relief from BELCHIC arising from this conduct.

12. On or about October 13, 2008, CITIZEN SMITH filed its motion seeking the Court's order approving CITIZEN SMITH's assumption of the lease. Therein, CITIZEN SMITH submitted that is was sound business judgment for this Debtor-in-Possession to assume the lease, and also established that HMC and GAJDA had no grounds on which to evict CITIZEN SMITH. CITIZEN SMITH also provided an accounting which shows that HMC and GAJDA have demanded rent payments in amounts far exceeding that required under the lease, and that as of August, 2008, CITIZEN SMITH had already overpaid approximately $80,000.00 in rent to HMC and GAJDA. CATULLO and SINCLAIR have at all times consistently maintained that they received no written notice of any rent increase from HMC and/or GAJDA, as is required by the terms of the lease, and have so stated under penalty of perjury.

13. To summarize, Mr. Sinclair and Mr. Catullo, both declared under penalty of perjury that they received no written notice from Mr. Gajda of: (1) a 375 square feet of additional footage (the "375 Issue"); (2) that Citizen Smith's share of the NNN charges will go from 27.5% to 32% because of the additional ground floor space (the "27.5%-32% Issue"); & (3) that effective August 1st, 2007 the total rent including NNN charges will go to $10,960.75 for both Citizen Smith and New York Next LLC (the "$10,960.75 Rent Increase as of August 1, 2007 Issue").

14. CITIZEN SMITH has demanded that HMC and GAJDA refund the full amount to

|    |     |
|----|-----|
| 1  | CITIZEN SMITH, which HMC and GAJDA have refused to do. Instead, HMC and |
| 2  | GAJDA have continued to demand that CITIZEN SMITH tender inflated monthly rent, |
| 3  | to which CITIZEN SMITH has responded that HMC and GAJDA apply the already |
| 4  | overpayments to monthly rent as it becomes due. This Court has ordered that rent should |
| 5  | be paid until end of January 2009 and that CITIZEN SMITH has, despite HMC and |
| 6  | GAJDA's efforts to inhibit it, complied with that order. |
| 7  | 15.  On October 23, 2008, HMC and GAJDA filed an opposition to CITIZEN SMITH's |
| 8  | motion to assume the lease. Therein, HMC and GAJDA claimed, as their have |
| 9  | previously, that they *had* given written notice to CITIZEN SMITH of the rent increases |
| 10 | (ie: (1) the "375 Issue"; (2) the "27.5%-32% Issue"; & (3) the "$10,960.75 Rent |
| 11 | Increase as of August 1, 2007 Issue"). Thus, as of the October 23, 2008 pleadings, |
| 12 | HMC and GAJDA also claimed (unsubstantiated by evidence of written notice), that it |
| 13 | did not owe CITIZEN SMITH any funds, as CITIZEN SMITH's rental payments were |
| 14 | consistent with the lease and written notices of increases thereunder. In declarations |
| 15 | attached to their opposition, GAJDA attested that he had given written notice to |
| 16 | CITIZEN SMITH of rent increases, just as he had in asserted in a declaration he filed in |
| 17 | the state court action on October 2, 2008. Although GAJDA claimed, unequivocally, |
| 18 | that written notice had been given, neither declaration included or attached a copy of that |
| 19 | purported writing. CITIZEN SMITH's management had previously requested proof of |
| 20 | the notices to justify the increased rent amounts, but HMC, GAJDA, and their counsel |
| 21 | never provided any. |
| 22 | 16.  On October 27, 2008, the day before the hearing on HMC's motion to lift stay, at 4:55 |
| 23 | p.m., the Court posted its tentative ruling on Webpacer. Therein, the Court stated: |
| 24 | "Deny relief from stay on issues apart from amount of rent owing - _no evidence that_ |
| 25 | _they were raised with debtor prepetition_ ... ." [Emphasis added] That is, the Court did |
| 26 | not have before it any evidence that HMC and/or GAJDA had given adequate written |
| 27 | notice of the rent increases, despite HMC and GAJDA's claims. |
| 28 | 17.  At the hearing of October 28, 2008, the Court denied HMC's motion to lift stay, and |

1  continued CITIZEN SMITH's motion to assume the lease to January, 2009. After the
2  hearing, I approached HMC and GAJDA's counsel (Messrs Kupetz & Saltz), in hopes of
3  finally obtaining some cooperation concerning settlement discussions. It was then, and
4  only then, that HMC's counsel revealed to me that they possessed a declaration executed
5  by GAJDA, and filed the day before, on October 27, 2008, in opposition to an anti-
6  SLAPP motion brought in the state court action (now removed to these proceedings) that
7  GAJDA *had* indeed given written notice to CITIZEN SMITH of the rent increases (ie:
8  (1) the "375 Issue"; (2) the "27.5%-32% Issue"; & (3) the "$10,960.75 Rent Increase
9  as of August 1, 2007 Issue." I asked Messrs Kupetz & Saltz to see the October 27, 2008
10 Gadja Declaration. Mr. Saltz declined to hand it over to me to review, but Mr. Kupetz
11 promised to email it to me later that day which he did.[1]

12 18.  I thought it was a little convenient and odd that this evidence was suddenly conveniently
13 disclosed – that this stunning piece of evidence made no appearance in any of HMC's
14 previously filed, and voluminous, pleadings (in either State or Federal Court). The fact
15 that it also did not appear in the pleadings filed by Messrs. Kupetz & Saltz on October
16 23rd (just four days before they filed their State court pleadings) made me more, not less,
17 suspicious of their firm's role in all of this. <u>Surely Messrs. Kupetz & Saltz would have
18 raised an eyebrow at the sudden arrival of this incredibly relevant document, purportedly
19 validating all GAJDA has been claiming to date</u>.

20 19.  GAJDA's new declaration stated as follows, at paragraph 7:

21      As a direct result of these increases and the additional square
         footage, on July 1, 2007, I sent Dan Catullo an email that I drafted
22      explaining that: "Based on our mutual agreement with you and
         Andrew Belchic we need to charge you for the additional 375 ft of
23      ground floor space that was not originally included in the lease."
         The email also informed Catullo that there were two leases, the
24      NY Lease and the original Lease, under which Plaintiff occupied

---

[1] A true and correct copy of *Reply of Defendants Hollywood Media Center, LLC., and David Gajda to Opposition to Special Motion to Strike the First Amended Complaint; Memorandum Of Points and Authorities; Declarations of David Gajda, Andrew Belchic and Michael J. Saltz.*, in the matter entitled: <u>Citizen Smith LLC., vs. Hollywood Media Center, LLC., David Gajda</u>, LASC BC390765 (c/w 08U04924 and BC393016) is attached hereto as Exhibit "f" and is incorporated herein by this reference.

the property it currently is in and that because of the additional square footage, Plaintiff's share of the NNN charges would increase from 27.5% to 32%. The email additionally informed Catullo that this rent increase would go into effect on August 1, 2007, bringing the total rent obligation for all of the property Plaintiff occupied combined to $10,960.75 per month inclusive of NNN charges. A true and correct copy of this email is attached as Exhibit 41 and incorporated herein by this reference.

20. The attached "Exhibit 41" purports to be an e-mail from GAJDA to Mandy Catullo (and copied to others), dated July 1, 2007. Specifically, it reads as follows:

> Mandy,
> Attached is the July rent invoice for Citizen Smith. It includes the electrical and water charges for the month. I have also attached scanned images of those two bills. I got home from Amsterdam on Saturday. Ill [sic] be working on hopefully getting our deal finished this week. I had Randy Van Ausdal measure all the spaces in the building. Citizen Smiths [sic] interior in the lease was 3429 square feet and the New York Next LLC is 65 square which combined is 4124 sq ft on the ground floor. Randys [sic] peope [sic] came up with 4509 sq ft on the ground floor and 881 sq ft of mezzanine. We originally told Andrew [BELCHIC] that we would not charge for the extra square footage of the mezzanine he added until the end of the 10 year base lease or unless he sold so we will need to include this in the final agreement. Also, I am assuming you are buying both Citizen Smith and New York Next? Is this true because these are two separate leases. Based on our mutual agreement with you and Andrew Belchic we need to charge you for the additional 375 ft of ground floor space that was not originally included in the lease. In addition, your share of the NNN charges will go from 27.5% to 32% because of the additional ground floor space. Effective August 1, 2007 the total rent including NNN charges will go to $10,960.75 for both Citizen Smith and New York Next LLC. Let me know if you need any further breakdown. Ill [sic] also send Andrew Belchic a written notice of this change to the restaurant.
> Thanks,
> Dave

21. GAJDA also states, at paragraph 8 of this declaration, that:

> On July 1, 2007, I gave Belchic notice of the aforementioned rent increase, as he was still plaintiff's managing member at that time. A true and correct copy of this Notice is attached as Exhibit 42 and incorporated herein by this reference.

22. The attached "Exhibit 42" is the purported letter from GAJDA to BELCHIC, which quotes the same language as that in "Exhibit 41," and specifically references this purported e-mail of the same date: "Andrew, I have inserted the email that I sent to

|   |   |   |
|---|---|---|
| 1 |   | Mandy [CATULLO] and Dan [CATULLO] per the rent change because of the additional |
| 2 |   | square footage. Also, please let me know your new email so I can include you in these |
| 3 |   | email's [sic] in the future." |
| 4 | 23. | Upon returning to my office following the hearing and revelations of October 28, 2008, |
| 5 |   | I was able to ascertain that GAJDA had sent CATULLO an e-mail on July 1, 2007, but |
| 6 |   | that the actual e-mail did not include any language constituting notice of any rent |
| 7 |   | increase as GAJDA asserted in his new declaration. |
| 8 | 24. | I obtained copies of the actual e-mail, not just from CATULLO, but also from two other |
| 9 |   | individuals who were copied with the original e-mail as well (Mandy Catullo and Scott |
| 10 |   | Kamalski), from their Gmail servers. Specifically, the actual July 1, 2007 e-mail from |
| 11 |   | GAJDA to CATULLO reads as follows: |

> Mandy and Dan,
> Attached is the July rent invoice for Citizen Smith. It includes the electrical and water charges for the month. I have also attached scanned images of those two bills. I got home from Amsterdam on Saturday. Ill [sic] be working on getting our deal finished this week. I had Randy Van Ausdal measure all the spaces in the building. Citizen Smiths interior was listed in the combine [sic[ leases as 4124 sq ft on the ground floor. Randys [sic] peope [sic] came up with 4509 sq ft on the ground floor and 881 sq ft of mezzanine. We originally told Andrew [BELCHIC] that we would not charge for the extra square footage of the mezzaninehe added until the end of the 10 year base lease or unless he sold. Based on the all the problems youve [sic] faced we decided to transfer this agreement to you. However, we do need to include rental on the additional 375 ft of ground floor space that was not originally included.
> Ill [sic] get you the final agreement from our lawyers this week.
> Dave

25. It was therefore clear to me that HMC, GAJDA, and its counsel had created and submitted, as credible evidence under penalty of perjury, **forged, falsified, and/or fictitious documents**. The language of the July 1, 2007 e-mail had been substantially altered. And, because the purported purpose of the document attached as "Exhibit 42" to GAJDA's declaration was to advise BELCHIC of the rent increase terms of the false-e-mail "Exhibit 41," it is also reasonable to assume that this purported letter, dated July 1, 2007, never was written and sent as asserted by GAJDA. In fact, CITIZEN SMITH

1  submits that it is apparent that given the conspiracy between HMC, GAJDA, and
2  BELCHIC (and their common representation by counsel), this document demonstrates
3  that BELCHIC was also willing to perpetrate a fraud, as it was only recently created to
4  facilitate BELCHIC's "corroboration" of the forged e-mail, and its contents, bearing the
5  same date.

6  26.  I have prepared a black-lined version of the bogus letter below and the Court will be
7  able to clearly see that the areas which were redlined were added by GAJDA (and
8  possibly by his counsel) to the real letter of July 1, 2007, which coincidentally and
9  conveniently were precisely the very issues that Mr. Catullo and Mr. Sinclair said were
10  not given: (1) the "375 Issue"; (2) the "27.5%-32% Issue"; & (3) the "$10,960.75 Rent
11  Increase as of August 1, 2007 Issue" - issues that are central to the question of the rental
12  obligations.

> Mandy **and Dan**,
> Attached is the July rent invoice for Citizen Smith. It includes the electrical and water charges for the month. I have also attached scanned images of those two bills. I got home from Amsterdam on Saturday. Ill be working on **hopefully** getting our deal finished this week. I had Randy Van Ausdal measure all the spaces in the building. Citizen Smiths interior **in the lease** was **3429 square feet and the New York Next LLC is 65 square which combined** ~~listed in the combine leases as~~ **is** 4124 sq ft on the ground floor. Randys peope came up with 4509 sq ft on the ground floor and 881 sq ft of mezzanine. We originally told Andrew that we would not charge for the extra square footage of the mezzanine he added until the end of the 10 year base lease or unless he sold **so we will need to include this in the final agreement. Also, I am assuming you are buying both Citizen Smith and New York Next? Is this true because these are two separate leases. Based on our mutual agreement with you and Andrew Belchic we need to charge you for the additional**. ~~Based on the all the problems youve faced we decided to transfer this agreement to you. However, we do need to include rental on the additional~~ 375 ft of ground floor space that was not originally included **in the lease.**[2] **In addition, your share of the NNN charges will go from 27.5% to 32%**[3] **because of the additional ground floor space. Effective August 1st, 2007 the total rent including NNN charges will go to $10,960.75 for both Citizen Smith and New York**

---

[2] The footnote is mine: the "375 Issue."

[3] The footnote is mine: the "27.5%-32% Issue."

> Next LLC.[4]
> ~~Let me know if you need any further breakdown. Ill also send
> Andrew Belchic a written notice of this change to the
> restaurant.~~
> ~~Ill get you the final agreement from our lawyers this week.~~
> ~~Thanks~~
> Dave

27. In all of my years of practice, I have <u>never</u> seen such blatant acts of false testimony and fraud perpetuated against a court of law. The fraud crosses several different mediums (email and hard copy) and two different documents – and indicates a pattern of deceit, methodical behavior, premeditation to defraud, and it compounds (geometrically) the fraud. I have many questions as to how HMC's counsel submitted such bogus evidence in your pleading.

28. On November 2, 2008, I wrote HMC's counsel about the above concerns. They have yet to responded.[5]

29. Given these recent revelations, CITIZEN SMITH requests that the Court make any and all orders necessary to fully investigate and pursue appropriate prosecution against HMC, GAJDA, BELCHIC, and their counsel for these fraudulent actions, including the institution of proceedings before this Court, the state court, and the State Bar, as deemed appropriate by the Court.

30. It is presently CITIZEN SMITH's position that there is no practical reason to proceed with the Chapter 11 proceedings, and no benefit to be realized therefrom, given the status of CITIZEN SMITH's business, including its satisfaction of creditors, and its successful and profitable operation of the business by current management. In fact, CITIZEN SMITH submits that continuation of the Chapter 11 proceedings will actually have an adverse effect on CITIZEN SMITH, its creditors, and its continuing business interests, for the following reasons:

---

[4] The footnote is mine: the "$10,960.75 Rent Increase as of August 1, 2007 Issue."

[5] A true and correct copy of my letter of November 2, 2008 is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1. going forward, compliance with the remaining Chapter 11 procedures and filings will be unnecessarily expensive and time consuming;

2. continuation of these proceedings would be an exercise in form-over-substance, as it would require expending resources which are disproportionate to the remaining few issues to be resolved;

3. the remaining disputes are not with actual good faith creditors, but with entities and persons such as HMC, GAJDA, and BELCHIC, and their counsel, who, CITIZEN SMITH has amply shown, are wholly lacking in credibility, not forthcoming with the Court, willing to take actions which are directly in conflict with any reorganization (even if that risks contempt prosecution), willing to file and pursue frivolous litigation, if only for the purpose of forcing CITIZEN SMITH to unnecessarily incur expenses and waste other valuable resources best spent in furthering CITIZEN SMITH's successful business pursuits, and having done nothing which would justify any further expense or the Court's consideration;

4. continuation of these proceedings will only serve to handicap CITIZEN SMITH further in going forward with its profitable operation, as expenses of continuing administration herein will only serve to deplete CITIZEN SMITH's hard-fought, and substantial, interests in various assets, including:

   i. CITIZEN SMITH lease at the premises (including approximately $3 million CITIZEN SMITH has invested in custom improvements to the premises), through 2024;

   ii. over $ 80,000.00 in prepaid rent presently being wrongfully withheld by HMC and GAJDA;

   iii. CITIZEN SMITH's accounts receivables, etc.;

   iv. CITIZEN SMITH's goodwill;

   v. damages for contempt of court against HMC and GAJDA;

   vi. damages for contempt of court against BELCHIC;

vii.  any and all proceeds of further actions against HMC, GAJDA, and BELCHIC arising from their recent frauds perpetrated herein;

viii. any and all proceeds of CITIZEN SMITH's litigation against HMC, GAJDA, and BELCHIC; and

ix.  any recovery which CITIZEN SMITH will be entitled to as a result of prevailing in HMC and GAJDA's frivolous eviction litigation.

31. Going forward, CITIZEN SMITH anticipates that it will eventually dismiss the instant matter once all outstanding issues have been resolves, which CITIZEN SMITH submits should be accomplished in the _very_ near future. CITIZEN SMITH also submits that given the recent revelations of the fraudulent documents produced and produced by HMC, GAJDA, BELCHIC and their counsel, CITIZEN SMITH will no longer have to engage in the discovery which it previously anticipated to be necessary to proceeding, and prevailing, in its litigation with HMC, GAJDA and BELCHIC. The continuation of CITIZEN SMITH's hearing on its motion to assume the lease to January of 2009 is no longer necessary, and that date may be advanced, as these same fraudulent actions are decisive (as the Court has already pointed out in its denial of HMC's prior motion to lift stay). CITIZEN SMITH anticipates that, pending resolution of these matters and CITIZEN SMITH's eventual dismissal, CITIZEN SMITH may request that these proceedings be stayed to maintain the status quo.

32. Previously, the Court continued HMC's Motion to Appoint a Chapter 11 Trustee to this Wednesday, November 12, 2008. This morning, I learned that HMC filed a nearly-eleventh hour "voluntary withdrawal" of its Motion, which HMC e-filed on November 7, 2008. The Motion has already been opposed by CITIZEN SMITH and heard by the Court, albeit to continue the Motion to allow the parties to mediate the matter, which efforts HMC and GAJDA have, since such order, only frustrated. HMC's purported "voluntary withdrawal" was filed without prior notice to CITIZEN SMITH, let alone CITIZEN SMITH's stipulation or approval, and apparently without the Court's approval as well.

1  I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct.
3  Executed November 10, 2008, at Los Angeles, California.

_____
Baruch C. Cohen

## DECLARATION OF DAN CATULLO

I, DAN CATULLO, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. The attached "Exhibit 41" purports to be an e-mail from GAJDA to me (and copied to others), dated July 1, 2007. Said document is a forged, falsified, and/or fictitious document as I have never received said document.

3. The actual July 1, 2007 e-mail from GAJDA to me reads as follows:

> Mandy and Dan,
> Attached is the July rent invoice for Citizen Smith. It includes the electrical and water charges for the month. I have also attached scanned images of those two bills. I got home from Amsterdam on Saturday. Ill [sic] be working on getting our deal finished this week. I had Randy Van Ausdal measure all the spaces in the building. Citizen Smiths interior was listed in the combine [sic] leases as 4124 sq ft on the ground floor. Randys [sic] peope [sic] came up with 4509 sq ft on the ground floor and 881 sq ft of mezzanine. We originally told Andrew [BELCHIC] that we would not charge for the extra square footage of the mezzanine he added until the end of the 10 year base lease or unless he sold. Based on the all the problems youve [sic] faced we decided to transfer this agreement to you. However, we do need to include rental on the additional 375 ft of ground floor space that was not originally included.
> Ill [sic] get you the final agreement from our lawyers this week.
> Dave[6]

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed November 10, 2008, at Los Angeles, California.

_____
DAN CATULLO

---

[6] A true and correct copy of the actual July 1, 2007 e-mail from GAJDA to me taken from my gmail server is attached hereto as Exhibit "3" and is incorporated herein by this reference.

F:\DOCS\CITIZEN-SMITH\APPOINT-TRUSTEE-SUPP-DEC-BCC-OPP.wpd5
11/10-5:10pm

## DECLARATION OF MANDY CATULLO

I, MANDY CATULLO, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. The attached "Exhibit 41" purports to be an e-mail from GAJDA to me (and copied to others), dated July 1, 2007. Said document is a forged, falsified, and/or fictitious document as I have never received said document.

3. The actual July 1, 2007 e-mail from GAJDA to me reads as follows:

> Mandy and Dan,
> Attached is the July rent invoice for Citizen Smith. It includes the electrical and water charges for the month. I have also attached scanned images of those two bills. I got home from Amsterdam on Saturday. Ill [sic] be working on getting our deal finished this week. I had Randy Van Ausdal measure all the spaces in the building. Citizen Smiths interior was listed in the combine [sic[ leases as 4124 sq ft on the ground floor. Randys [sic] peope [sic] came up with 4509 sq ft on the ground floor and 881 sq ft of mezzanine. We originally told Andrew [BELCHIC] that we would not charge for the extra square footage of the mezzaninehe added until the end of the10 year base lease or unless he sold. Based on the all the problems youve [sic] faced we decided to transfer this agreement to you. However, we do need to include rental on the additional 375 ft of ground floor space that was not originally included.
> Ill [sic] get you the final agreement from our lawyers this week.
> Dave[7]

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed November 10, 2008, at Los Angeles, California.

_____
MANDY CATULLO

---

[7] A true and correct copy of the actual July 1, 2007 e-mail from GAJDA to me taken from my gmail server is attached hereto as Exhibit "3" and is incorporated herein by this reference.

F:\DOCS\CITIZEN-SMITH\APPOINT-TRUSTEE-SUPP-DEC-BCC.OPP.wpd
11/10-5:10pm
46