


Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501    Fax (323) 937-4503
email: BCC4929@aol.com

*Attorney For Citizen Smith, LLC*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>**CITIZEN SMITH, LLC**<br><br>Debtor. | Case No. 2:08-bk-19197-SB<br>Assigned to the Honorable Samuel Bufford<br>Chapter 11<br><br>**CITIZEN SMITH'S REPLY TO OPPOSITION TO ITS MOTION TO QUASH SUBPOENAS, OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**<br><br>Date: December 16, 2008<br>Time: 11:00 am<br>Place: Courtroom 1575<br>Edward Roybal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

Debtor, CITIZEN SMITH (hereinafter referred to as "CITIZEN SMITH"), hereby replies to the Opposition to CITIZEN SMITH's Motion: (1) to quash subpoenas, or, in the alternative, (2) for protective order or other relief, filed herein by HOLLYWOOD MEDIA CENTER, LLC (hereinafter referred to as "HMC"). CITIZEN SMITH's motion is directed at HMC's service of five (5) subpoenas, as follows: (1) James Sinclair (hereinafter referred to as "SINCLAIR"), CITIZEN SMITH's operator, demanding deposition on December 16, 2008; (2) CITIZEN SMITH's counsel, Baruch C. Cohen, demanding deposition on December 18, 2008; (3) CITIZEN SMITH, LLC, demanding production of documents on December 3, 2008; (4) Wells Fargo Bank, demanding production of documents on December 3, 2008; and (5) Bank of

America, demanding production of documents on December 3, 2008.

I.  INTRODUCTION

The Opposition is a typical document from HMC and its counsel, with typically specious arguments. It also manages to make accusations against CITIZEN SMITH and its counsel that, in fact, more accurately indicate the suspect actions of HMC and its counsel. Most prevalent among such assertions are: (1) a lack of meaningful meet and confer (which, if was lacking, was due to HMC's counsel's frustration of meaningful discussion); (2) that CITIZEN SMITH's counsel prematurely filed the instant motion because HMC had not yet served all of its subpoenas (again, not anything HMC's counsel thought meaningful to mention during meet and confer, assuming any of it was true); (3) that CITIZEN SMITH fails to establish that the information sought is subject to privilege (where HMC's subpoena to CITIZEN SMITH's counsel makes no disclosure (or hint) of the subject matter of the desired deposition); (4) that CITIZEN SMITH's counsel has waived privilege because of his October 13, 2008 declaration (yet another fabrication which HMC's counsel is now using to convert counsel into some species of percipient witness, when it is clear from the declaration that neither confidences nor work product was disclosed, and that all matter contained in the declaration is also within the personal know); (5) that the documents demanded from CITIZEN SMITH are relevant and not overbroad (HMC only specifies the first 3 demands pertaining to the lease payment issue, when the remaining (XX) demands, which HMC neglects to mention, let alone argue, and as HMC's counsel acknowledged, pertained only to HMC's motion to appoint a trustee, which HMC has withdrawn); and (6) that sanctions should be imposed upon CITIZEN SMITH's counsel for failure to meet and confer in person, with a proposed stipulation (which HMC's counsel prevented by their own "meet and confer" tactics, which include an underlying associate's telephone call on the eve of the meet and confer deadline, advancing a reasonable discussion and promising a discussion with senior counsel and call back that never occurred), and because the motion has no merit.

Also throughout the Opposition, HMC and its counsel continue to mislead the Court as it concerns CITIZEN SMITH's motion, and by interjecting other extraneous matter having no

1  place in this discussion, much like HMC's irrelevant, abusive, and wholly frivolous discovery
2  demands. HMC incorrectly alleges that CITIZEN SMITH has not based its arguments on any
3  authority. HMC incorrectly mischaracterizes, or parses, the facts, both procedural and
4  substantive. And, by use of these first two devices, HMC leaps to the conclusion it wants to
5  create, using such unfounded terms as "decisively," "clear," "," and others.
6      To summarize, nothing presented in the opposition deviates from the frivolous and
7  abusive discovery tactics giving rise to the instant motion; CITIZEN SMITH remains entitled to
8  the relief requested.
9  II.    ARGUMENT
10      A.    HMC HAS ALREADY CONCEDED MANY OF THE ISSUES RAISED IN
11          THE ORIGINAL MOTION BY ITS SUBSEQUENT ACTIONS
12      Subsequent to the filing of the motion, and not until after the order shortening time was
13  denied, the hearing was set, and CITIZEN SMITH's counsel was out of the country, HMC and
14  its counsel correct many of the defects which are the subject of this motion. HMC and its
15  counsel use these curative efforts as "proof" that CITIZEN SMITH had filed the motion
16  prematurely. Such an argument overlooks the fact that prior to filing the motion and leaving the
17  country, CITIZEN SMITH's counsel had attempted to meet and confer with HMC's counsel -
18  which attempts included specification of the defects noted - and HMC's counsel's baited and
19  curt response defended the subpoenas and service as without defect, and adamantly refused to
20  withdraw or correct any process.
21      Such an argument also avoids the implicit admission in counsel's subsequent actions that
22  CITIZEN SMITH's objections to the subpoenas and their service are well taken - even by HMC
23  and its counsel.
24      First, CITIZEN SMITH's counsel noted that non-party deponents (Mr. Sinclair, Mr.
25  Cohen) could not be summoned to deposition solely on the strength of the subpoena issued,
26  which also lacked statutorily-required language concerning the mode and method of recording.
27  HMC's counsel, on November 26, 2008, signed notices of deposition which provide specifics as
28

to recording.[1]

Second, on November 19, 2008, in the Motion, CITIZEN SMITH's counsel advised that while he had already been personally served with witness fees provided, Mr. Sinclair had been neither personally served nor provided with witness fees. <u>Thereafter</u>, on November 24, 2008, HMC's counsel had Mr. Sinclair personally served with original subpoena and witness fees (the newly-prepared notice of deposition was served on Mr. Cohen by mail on November 26, 2008).[2] On November 26, 2008, Mr. Cohen's notice of deposition (with copy of the original subpoena) was served on him by mail.

Third, HMC's opposition admits that the majority of the document demand on CITIZEN SMITH is, indeed, irrelevant and overbroad, just as CITIZEN SMITH asserts in the motion, by arguing that the first three demands pertain to the outstanding rent issue. By omission, HMC acknowledges that the remaining demands do not pertain to this - or any other - outstanding issue.[3] And, because most of the documents which HMC seeks are irrelevant, the discovery demand is, by definition, overbroad.

Fourth, HMC's opposition itself concedes that CITIZEN SMITH was originally correct in asserting that the information demanded by HMC of Mr. Cohen - whatever that undisclosed aim was - by establishing that (1) the proposed deposition of Mr. Cohen is based upon his purported "testimony" concerning CITIZEN SMITH's rent payments and his communications with HMC's counsel re same; (2) the basis for HMC's theory of waiver of privileges, so as to allow them to take Mr. Cohen's deposition, is Mr. Cohen's declaration dated October 13, 2008; and (3) the declaration provides that Mr. Cohen is attesting to matters within his personal

---

[1] HMC again misleads the Court by arguing that the notice of deposition served on Mr. Sinclair was proper. However, no notice of deposition was even signed, let alone served, at the time the subpoenas were purported to have been originally served on Mr. Cohen.

[2] In its opposition, HMC asserts that Mr. Sinclair was originally served properly, via personal service on Mr. Cohen. Mr. Sinclair is a non-party to this action, the subpoena alone was insufficient for this purpose. Further, Mr. Cohen represents party CITIZEN SMITH in this action.

[3] Like many other issues, HMC seeks to defeat CITIZEN SMITH's argument by attempting to disprove a portion of it. CITIZEN SMITH has never argued that all of the categories demanded were irrelevant or overbroad, a detail which HMC ignores in order to "defeat" CITIZEN SMITH's position.

knowledge: his communications with HMC's counsel, including letters he written (but, which letters, of course, do not state that Mr. Cohen has personal knowledge of the facts stated there or that Mr. Cohen writes the letter under penalty of perjury).

Again, a motion to quash is proper as to some, if not all, of the subpoenas, as originally requested in the motion. In the alternative, protective orders are called for, where HMC is not entitled to certain information from its selected sources, or is not entitled to obtain the procedures and things which its own overreaching demands.

B.  THE SUBJECT MATTER SOUGHT IN THE PROPOSED DEPOSITION OF BARUCH C. COHEN IS SUBJECT TO PRIVILEGE, WHICH HAS NOT BEEN WAIVED

HMC asserts that (1) CITIZEN SMITH and its counsel have failed to establish a *prima facie* showing that privilege protects the information sought by the party seeking discovery; and (2) CITIZEN SMITH and its counsel have waived any applicable privilege by the submission of certain documents to opposing counsel and the Court.

As the Ninth Circuit recognizes, "[s]ections 953(a) and 954 of the California Evidence Code provide that the client, as the holder of the privilege, is entitled to refuse to disclose a confidential communication between the client and his lawyer." (*KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987), applying California state law to privilege issues under Federal Rule of Evidence 501.) Thus, "[a]n attorney has the duty to preserve the confidences of the client at every peril to himself and to assert the privilege for the client even after the attorney-client relationship ends." (*In re Rindlisbacher*, 225 B.R. 180, 184 (BAP 9th Cir. 1998); see also *Rittenhouse v. Superior Court*, 235 Cal.App.3d 1584, 1590 (1991): "As a general rule, privileged communications are protected regardless of their relevancy to the issues in the litigation, and despite any private or public interest in disclosure.")

How HMC proposes to expect CITIZEN SMITH and its counsel to establish a *prima facie* showing concerning the information sought is unreasonable: HMC had not disclosed the information sought, and still fails to do so, despite its assertions that the issue of privilege has already been "decisively" determined.

1    Nonetheless, it is clear that, given the information available at the time the motion was filed, CITIZEN SMITH and its counsel have established each of the prima facie elements which HMC and its counsel insist upon: (1) CITIZEN SMITH is Mr. Cohen's client; (2) Mr. Cohen, the person to whom the communication was made, (a) is a member of the Bar, and (b) the communication was made in the course of Mr. Cohen's acting as CITIZEN SMITH's lawyer; (3) the communication was related to Mr. Cohen (a) by a client, (b) in the absence of strangers, and (c) for the purpose of securing (i) an opinion of law, (ii) legal services, or (iii) assistance in a legal proceeding. It is also clear that the communication does not concern the commission of a crime or tort. Finally, CITIZEN SMITH has not waived any applicable privilege.

In fact, it is only in HMC's opposition that it is finally revealed that: "The subject matter of the declaration includes testimony as to the alleged overpayment of rent by Citizen Smith and various letters and communications between Mr. Cohen and David Kupetz thereto." (Opposition, page 3, lines 27-28.) HMC's waiver argument is based entirely upon Mr. Cohen's declaration in support of CITIZEN SMITH's motion to assume lease, dated October 13, 2008.

With this revelation, CITIZEN SMITH can respond by stating that in the declaration specified, Mr. Cohen provides no testimony concerning CITIZEN SMITH's rent, only the letters and communications which he exchanged with HMC's counsel regarding such issues.

For example, Mr. Cohen declares, at paragraph 6, that "On September 17, 2008, I wrote David Kupetz, counsel for HMC, that not only was the rent current ... , but as of September 1, 2008, CITIZEN SMITH discovered that the rent was grossly overpaid ... ." Mr. Cohen, under penalty of perjury, and based upon his own personal knowledge, declares that he sent a letter to HMC's counsel which contained such information. Although HMC's counsel apparently claims (or would like to claim that) Mr. Cohen did, he did not declare that "The rent is current," "I discovered that the rent was grossly overpaid," or the like. This can be seen throughout the declaration - that Mr. Cohen declares only those facts within his personal knowledge, none of which constitutes a disclosure of confidences or work product, and none of which waives any privilege.

The distinction between testifying that someone sent a letter and testifying as to what

that letter contains is great, and determinative on this issue. Finally, it is also revealing that HMC's counsel would go to such lengths (certainly knowing better, if not completely ignorant) to manufacture a waiver of privilege and thereby create a witness in Mr. Cohen.

HMC's attempts to depose Mr. Cohen is improper under the prevailing rule limiting testimony of opposing litigation counsel, as set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). The *Shelton* court explained, "[t]he harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." (*Id.* at 1330.) The Ninth Circuit district courts have "uniformly followed" *Shelton*. (See *Massachusetts Mutual Life Insurance Co. v. Cerf*, 177 F.R.D. 472 (N.D. Cal. 1998).)

The *Massachusetts Mutual* court stated:

> Fed.R.Civ.P. 30(a) provides that depositions may be taken of "any person." Therefore, there is no express prohibition against the taking of attorney depositions. See *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986); and *American Cas. Co. of Reading, Pennsylvania v. Krieger*, 160 F.R.D. 582, 585 (S.D.Cal.1995). Courts, however, have cautioned that attorney depositions should be allowed only where the discovery sought cannot be obtained from another source. In *Shelton*, which is generally regarded as the leading case on attorney depositions, the Eighth Circuit Court of Appeals explained the judicial attitude toward such depositions as follows:
>> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, *see, e.g., Fireman's Fund Ins. Co. v. Superior Court*, 72 Cal.App.3d 786, 140 Cal.Rptr. 677, 679 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.
> *Shelton*, 805 F.2d at 1327. See also *Krieger*, 160 F.R.D. at 588 ("There are good reasons to require the party seeking to depose another party's attorney to bear the burden of establishing the propriety and need for the deposition.") (177 F.R.D. at 478-479.)

Also submitted with Mr. Cohen's declaration, in opposition to the motion to assume the lease, was Mr. Sinclair's declaration. Mr. Sinclair is the individual with personal knowledge on the rent issue, who researched CITIZEN SMITH's records, examined the lease documents,

performed the calculations, and created the chart and all other statements of fact on this issue. Had Mr. Cohen truly waived privilege, Mr. Sinclair's declaration would have been duplicative and superfluous. Instead, each presented declarations concerning their own, mutually-exclusive, areas of personal knowledge, and no more.

If HMC and its counsel are truly after the information they say they are, they need to inquire of the person who actually has personal knowledge: <u>Mr. Sinclair</u>. Of course, HMC also has at its disposal, and may therefore inquire of, Mr. Gajda and Mr. Belchic.

HMC, the party seeking Mr. Cohen's deposition, has made no effort to, and cannot, prove all three of these elements, and therefore the subpoena (and notice of deposition) must be quashed. As shown herein, HMC cannot satisfy any element of the *Shelton* test as to the deposition of Mr. Cohen.

In any event (and without concession of its other arguments), CITIZEN SMITH submits that even if the deposition was to proceed, HMC would not gain a single syllable: all matters in the declaration are well within the personal knowledge of its own counsel.

C. **CITIZEN SMITH AND ITS COUNSEL SUFFICIENTLY MET AND CONFERRED PRIOR TO FILING THE MOTION**

On this issue, HMC and its counsel become sticklers for the statutory language, arguing that CITIZEN SMITH's counsel did not properly meet and confer (including not simply communication, but also an in-person meeting and the preparation and proposal of a stipulation), and for that reason the motion should be denied and CITIZEN SMITH and its counsel sanctioned to the tune of nearly $7,000.00.

HMC and its counsel, however, start their argument with a misleading citation, or mis-citation, to citing Local Rule 9013-1(c)(1), failing to include the prefatory statement:

> (c) Discovery. For any dispute which may arise under F.R.B.P. 7026-7037 or F.R.B.P. 2004, counsel shall comply with all portions of this subsection of the Local Bankruptcy Rules unless excused from doing so by order of the court for good cause shown.

CITIZEN SMITH submits that the circumstances of the instant case, and motion, provide ample good cause for waiver of the more stringent requirements (which dictate time

1  parameters that simply were not possible), particularly where CITIZEN SMITH and its counsel
2  attempted, in good faith, to meet and confer with HMC's counsel (and HMC's counsel so
3  readily demonstrates a willingness to mislead even this Court).
4     CITIZEN SMITH has already documented its counsel's attempts to meet and confer with
5  HMC and its counsel. HMC and its counsel claim that CITIZEN SMITH and its counsel failed
6  to meaningfully meet and confer prior to filing the instant motion. However, history would
7  reveal that in compliance with applicable law, in good faith, and in well-tried patience,
8  CITIZEN SMITH's counsel has always met and conferred with HMC's counsel, no matter how
9  futile, including prior to this motion.
10     Particularly as it concerns these subpoenas, HMC complains that CITIZEN SMITH
11 acted too soon, overreacted, perhaps, because HMC's counsel hadn't completed the process.
12 However, the subpoenas were served on counsel on November 16, 2008 by mail (they are dated
13 November 12, 2008), as HMC acknowledges in the opposition. In response, CITIZEN
14 SMITH's counsel contacted HMC's counsel (on November 18, 2008) to meet and confer,
15 pointing out, at length, the defects in the subpoenas. In response (on November 19, 2008),
16 HMC's counsel acknowledged that defects may have, in fact, existed, and promised contact
17 later that afternoon to discuss correcting those defects. No mention during that discussion (there
18 were no more) was made concerning the efforts (at service, preparation of notices of deposition,
19 etc.) which HMC now states CITIZEN SMITH should have waited for before bringing the
20 instant motion. Instead, when the promised contact was not made, CITIZEN SMITH's counsel
21 contacted HMC's counsel, only to be referred to the associate who signed the subpoenas, who
22 was, of course, absent from the office. When she finally responded, it was with arguments
23 against those made by CITIZEN SMITH's counsel in his letter, in defense of the subpoenas,
24 and their service, "as-is." Nothing, however, was said concerning further action by her or her
25 office with regard to the subpoenas, including additional documents or service.
26     Thus, if these exchanges were not meaningful, it was not because of CITIZEN SMITH's
27 counsel's lack of trying; it was because of the action, and inaction, of HMC and its counsel,
28 who not only failed to properly meet and confer in good faith, they purposely frustrated

1 | CITIZEN SMITH's efforts in this regard.

2 |     CITIZEN SMITH's counsel, against a deadline which was well-known to HMC's

3 | counsel,[4] had no choice but to promptly prepare and file the instant motion, with a request for

4 | order shortening time. It was not until the request was denied and a hearing date set did HMC

5 | and its counsel correct its subpoenas, prepare notices of depositions (as required, and with the

6 | statutory language concerning the mode of recording), and serve them properly (with witness

7 | fees), much like those defects which CITIZEN SMITH first noted, demanded be corrected, and

8 | included in its motion. (The Court may note that these recent efforts by HMC's counsel

9 | occurred weeks after the subpoenas were originally prepared and served upon CITIZEN

10 | SMITH's counsel, after the order shortening time was denied and hearing scheduled, and while

11 | CITIZEN SMITH's counsel was out of the country on a holiday which he had previously

12 | disclosed to both the Court and HMC's counsel.)[5]

13 |     Now, HMC and its counsel have the audacity to assert that CITIZEN SMITH's counsel

14 | failed to meet and confer because he did not arrange an in-person meeting with HMC's counsel,

---

[4] CITIZEN SMITH's counsel was, only 2 days later, leaving on an 11-day holiday, first to New York and then to Israel. Counsel had disclosed it in open court, at which time HMC's counsel was present. In his meet and confer letter dated November 18, 2008, counsel again reminded HMC's counsel that he would be leaving on November 20, 2008 and would not return until December 1-2, 2008.

[5] This "cat-and-mouse" game has become characteristic of HMC's counsel, if only to churn fees both for themselves and CITIZEN SMITH's counsel as well, so as to cost CITIZEN SMITH as much as possible to deal with what would otherwise be simple issues, and in what would otherwise be a very straightforward and even streamlined matter. The motion for trustee was brought, then withdrawn, but only after CITIZEN SMITH's counsel had prepared an extensive opposition and appeared on the first hearing. HMC brought a frivolous motion to declare "void" the removal notices prepared and filed by CITIZEN SMITH's counsel pursuant to the Court's own order, then withdrew it only days before the hearing, but not until after CITIZEN SMITH had filed its opposition. The pattern is therefore thus: HMC serves or brings some frivolous, abusive, and/or procedurally deficient document or process, knowing it to be so, then waits for CITIZEN SMITH's counsel to (foreseeably) react with unnecessary effort and expenditure of CITIZEN SMITH's resources, then calls on the eve of the date on which CITIZEN SMITH's counsel's action in response to HMC's document or process is due, at which time a compromise, or withdrawal, or other settlement is proposed - all the while with a "wait and see" tease - with no follow-up as promised, then waiting CITIZEN SMITH's counsel to take action (HMC hopes, with a less-than, last-minute effort), then withdrawing, or scapegoating CITIZEN SMITH for simply defending itself, time and again. This can also be seen with the subpoenas discussed herein, the prior subpoenas served months ago, as well as many other threats by HMC and its counsel (most, if not all, of which are also constitute contempt) to evict CITIZEN SMITH, threaten its liquor license, make falsified complaints to the City, LAPD, and ABC, etc.

1  and because he did not prepare and propose a stipulation to HMC's counsel. If, in fact, HMC
2  and its counsel ever expected such efforts, it should not have one minute after HMC's counsel
3  made first attempted the old "bait-and-switch": with one attorney calling to offer compromise
4  and a prompt call back at 3:00 p.m., then providing (at 8:50 p.m.) an e-mail adamantly
5  defending the subpoenas and service without qualification.

6  It would appear that HMC and its counsel would like to equate "sufficient" meet and
7  confer efforts with "successful" meet and confer efforts. And, although such an approach is
8  irretrievably wrong, it is nonetheless consistent with HMC's approach, and that of its counsel,
9  that they can themselves prevent any measure of success by CITIZEN SMITH and its counsel
10 and then claim that the effort was "insufficient."

11 It is exactly such games that the discovery statutes were designed and enacted to avoid.
12 In frustrating these purposes, and for reasons other than legitimate fact-finding, HMC and its
13 counsel are manipulating any and all available methods and tactics, including those which are
14 abusive, oppressive, and simply intolerable.

15     D.    SANCTIONS AGAINST HMC AND/OR ITS COUNSEL ARE
16           APPROPRIATE: HMC AND ITS COUNSEL BAITED, INVITED, AND
17           FORCED THE INSTANT MOTION

18 Despite HMC's opposition, the following facts remain: (1) CITIZEN SMITH was
19 correct that the subpoenas issued for the depositions of Mssrs. Cohen and Sinclair were
20 deficient; (2) CITIZEN SMITH was correct that service of the subpoena on Mr. Sinclair was
21 deficient; (3) CITIZEN SMITH was correct that HMC's document demands to CITIZEN
22 SMITH were and are overbroad and demands categories of documents which are irrelevant; (4)
23 CITIZEN SMITH was and is correct that HMC's demands for the deposition of opposing
24 counsel, where no waiver of privilege has occurred, are wholly improper; and (5) CITIZEN
25 SMITH and its counsel made all reasonable efforts to meet and confer with HMC and its
26 counsel, until such efforts were eventually frustrated and prevented by same.

27 Prior to filing this motion, CITIZEN SMITH's counsel gave HMC's counsel written
28 notice as to the same deficiencies cited in the motion, and demanded either correction or

1 | withdrawal of the subject subpoenas. HMC complains that CITIZEN SMITH's counsel's efforts
2 | in this regard were insufficient, but only because HMC's counsel has realized that HMC's own
3 | "cat-and-mouse" game with CITIZEN SMITH's counsel frustrated and doomed any attempt at
4 | any meaningful and good faith meet and confer exchange.
5 |     Couple this conduct with that which CITIZEN SMITH and the Court have come to
6 | know from HMC and its counsel (also having represented Mr. Gajda and Mr. Belchic, who,
7 | along with HMC, have already been found to be in contempt), it is also apparent that their
8 | credibility has been greatly, and irrevocably, damaged.
9 |     HMC's actions in improperly drafting and preparing the subpoenas, failing to properly
10 | serve the subpoenas, improperly serving the subpoenas, frustrating meet and confer attempts,
11 | subsequently drafting and serving purportedly curative efforts consistent with CITIZEN
12 | SMITH's meet and confer efforts and directly contradicting those assertions formerly made by
13 | HMC's own counsel (after the motion had been brought, hearing set, and counsel out of
14 | country), then presenting this audacious, misleading, and hypocritical opposition (including
15 | raising meet and confer, and curative, efforts as CITIZEN SMITH's failings, and those of its
16 | counsel), all mandate the imposition of sanctions against HMC and/or its counsel.
17 |     In this latest instance of abuse of process, it is clear is that HMC and its counsel are
18 | using these subpoenas for reasons which are not in service of the objectives of the discovery
19 | statutes: (1) to harass CITIZEN SMITH and its counsel; (2) to obtain from CITIZEN SMITH
20 | and its counsel confidential, privileged information; (3) to procure the work of CITIZEN
21 | SMITH's counsel to obtain an unfair (and unearned) advantage; (4) to deflect attention away
22 | from HMC's, and its counsel's, continuing contempts of Court, as well as recent attempts to
23 | present falsified and perjured matter (including fabricated documents) as evidence against
24 | CITIZEN SMITH; and (5) in keeping with the continuing motives of HMC, David Gajda, and
25 | Andrew Belchic, to ultimately ruin CITIZEN SMITH, if only by wasting its resources chasing
26 | the repeated, and increasingly baseless, attempts by counsel such as these subpoenas.
27 |     It is time for this "cat and mouse" game to end. Although before a Bankruptcy Court,
28 | CITIZEN SMITH is not bankrupt, but will be if these manipulations and machinations are

1 | allowed to continue.

2 |   E.  CONCLUSION

3 |   For the foregoing reasons, CITIZEN SMITH respectfully requests that the Court issue its order quashing all five (5) subpoenas issued by HMC and its counsel. In the alternative, CITIZEN SMITH requests that the Court issue protective and other appropriate orders to forestall this discovery abuse.

DATED: December 8, 2008

            LAW OFFICE OF BARUCH C. COHEN
            A Professional Law Corporation

            By _____
            Baruch C. Cohen, Esq.
            *Attorney For Citizen Smith, LLC*

# PROOF OF SERVICE

I, Baruch C. Cohen, declare as follows:

I am, and was at all times herein mentioned, a citizen of the United States, a resident of the County of Los Angeles, State of California, over the age of 18 years and not a party to this action or proceeding. My business address is 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

Upon this day, I served the within **CITIZEN SMITH'S REPLY TO OPPOSITION TO ITS MOTION TO QUASH SUBPOENAS, OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER** on all interested parties in this action through their attorneys of record by placing a true and correct copy thereof, addressed as per the attached service list.

__X__  **VIA FIRST CLASS MAIL** [C.C.P. §§ 1012a, et seq., & Local Bankruptcy Rule 7004-1(2)(b)]. I deposited said document(s) into the United States mail at Los Angeles, California, in a sealed envelope with postage fully prepaid. My practice is to collect and process mail on the same day as shown on this declaration. Under that practice, all correspondence is deposited with the US Postal Service on the same day that it is placed for collection and processing, in the ordinary course of business.

____  **VIA HAND DELIVERY/PERSONAL SERVICE** (C.C.P. §§ 1001, et seq., & Local Bankruptcy Rule 7004-1(2)(c)]. I directed a courier to personally deliver said document(s) to each addressee.

____  **VIA FEDERAL EXPRESS/OVERNIGHT/NEXT BUSINESS DAY DELIVERY SERVICE** (C.C.P. §§ 1011, 1012, & Local Bankruptcy Rule 7004-1(2)(d)]. I enveloped, properly labeled, and caused to be deposited into a Federal Express pick-up receptacle as per the regular practice of my office.

____  **VIA FACSIMILE** (C.C.P. §§ 1012.5, & Local Bankruptcy Rule 7004-1(2)(e)]. I caused the said document(s) to be transmitted by Facsimile machine to the number indicated after the address(es) noted herein. I received written confirmation that the Facsimile transmission was received by the addressee.

I declare that I am a member of the State Bar of this Court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Los Angeles, California on December 8, 2008.

*/s/ Baruch Cohen*
Baruch C. Cohen

## SERVICE LIST

**OUST**
Russell Clementson, Esq.
Office of the United States Trustee
725 South Figueroa Street, Suite 2600
Los Angeles, CA 90017

**COUNSEL FOR HMC AND DAVID GAJDA AND ANDREW BELCHIC**
*Via Facsimile Transmission: 310/446-9909*
Mark Fingerman, Esq.,
Michael Slatz, Esq.
Jacobson, Russell, Saltz & Fingermann
10866 Wilshire Blvd., Suite 1550
Los Angeles, CA 90024

*Via Facsimile Transmission: 213/629-4520*
David S. Kupetz, Esq.
SulmeyerKupetz, APC
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, CA 90071

**REQUEST FOR SPECIAL NOTICE**
Henry B. LaTorraca, Esq.
Law Office of Henry B. LaTorraca
Union Bank of California Building
400 Oceangate, Suite 700
Long Beach, CA 90802-4306

**REQUEST FOR SPECIAL NOTICE**
*Via Facsimile Transmission: 818-705-3777*
Ian Landsberg, Esq.
Landsberg Margulies LLP
16030 Ventura Blvd Ste 470
Encino, CA 91436

*Via Facsimile Transmission: 213-624-7536*
Ronald Slates, Esq.
523 West Sixth Street, Suite 502
Los Angeles, CA 90014-1225